[No. 1025.]

THE STATE OF NEVADA EX REL. JAMES FARIS, RELATOR, *v.* A. J. HATCH, SURVEYOR-GENERAL AND EX OFFICIO STATE LAND REGISTER, RESPONDENT.

LAND LAWS CONSTRUED—WHEN PATENT WILL NOT BE ISSUED.—In construing the land laws of this state: *Held*, that no patent can be issued in the name of any person who has already purchased from the state three hundred and twenty acres of land.

APPLICATION for mandamus. The facts appear in the opinion.

*A. C. Ellis*, for Relator.

*M. A. Murphy*, Attorney-General, for Respondent.

By the Court, LEONARD, J.:

On the thirteenth day of September, 1873, Joseph T.

Mier entered into a contract in due form under the statute of this state, entitled, "An act to provide for the selection and sale of lands that have been, or may hereafter be, granted by the United States to the state of Nevada" (Statutes of 1873, 120), for the purchase of three hundred and twenty acres of land, the same being the north half of section eight, in township thirty-two north, of range forty-six east, Mount Diablo meridian, in this state. The purchase price was two dollars and fifty cents per acre, one fifth of which was paid by Mier to the state at the date of the contract, and the residue of the purchase price with interest thereon has since been fully paid, and was paid prior to, and at the time of the filing of the petition herein. On the twenty-second day of October, 1873, Mier, for a valuable consideration, and by an instrument in writing duly signed, sealed, and acknowledged, assigned and transferred the contract to the petitioner and George W. Crum, and authorized his said assignees to receive a patent from the state for said land. After full payment, the petitioner, for himself and Crum, presented a receipt in full from the state treasurer to respondent as state land register, and demanded that a patent of the state be issued and delivered to him and said Crum *in their names,* upon the ground that they were *bona fide* assignees of said Mier and entitled to receive such patent.

Respondent refused, and still refuses, to issue the patent in their names, upon the ground that the petitioner and Crum, prior to the demand for a patent, had each purchased from the state three hundred and twenty acres of land under the act in question, and that it had been the custom of the state land register not to issue or deliver patents of the state in the names of persons who had previously purchased from the state three hundred and twenty acres of land. This is an application for a writ of mandamus to compel the issuance of a patent in the names of the assignees.

The act of congress, whereby these lands were granted to the state, provides " that said state shall select said lands in her own name and right, in tracts of not less than forty acres, and dispose of the same in tracts not exceeding three

hundred and twenty acres, only to actual settlers and *bona fide* occupants." (See sec. 6 of "an act concerning certain lands granted to the state of Nevada, approved July 4, 1866;" Zabriskie's Land Laws, 677.)

In 1867, our legislature passed "an act in relation to, and accepting, the lands granted to the state of Nevada by the government of the United States," the third section of which reads as follows:

"Section 3. The state of Nevada hereby accepts all grants of public lands heretofore made by the government of the United States to this state, upon the terms and conditions so granted, as modified in the act of July 4, 1866, above in this act referred to." (Stat. 1867, 57.) In the same year an act was passed, entitled "an act to provide for the selection and sale of lands granted by the United States to the state of Nevada," wherein it was provided that, "the title of the state to the lands so sold shall be conveyed to the purchaser, or to his heirs or assigns, by patents," but it contained no prohibition against the sale of more than three hundred and twenty acres, under that act. (Id. 168.) In 1871, however, another law was passed, having the same title, wherein it was enacted that, "no person shall be allowed to purchase more than three hundred and twenty acres of land from the state, under the provisions of this act." (Stat. 1871, 138, sec. 13.) Section 15 of the same statute provided that, "the title of the state to any lands sold under the provisions of this act, shall be conveyed to the purchaser, or to his or her heirs or assigns, by patents." In 1873, the statute now in force was passed, and therein the sections just quoted were re-enacted.

Sections 13 and 15 must be construed together. They were both in force at the time of the assignment of the contract of the purchase by Mier, and the assignees must be presumed to have had knowledge of their existence.

We have little doubt, if any, that by the statutes of 1871 and 1873, the legislature intended to carry out what was regarded the spirit and intent of the proviso stated in the act of congress of 1866, above quoted, and with which the legislature of 1867, by their act of acceptance, agreed to

comply, and we think the legislative construction of the proviso is expressed in section 13 of the statute of 1873.

But, be that as it may, it is certain that the legislature declared and intended to declare, that no person should be allowed to purchase more than three hundred and twenty acres under the statute of 1873. If a person may receive the state's patent for more than three hundred and twenty acres, then surely it was folly to confine his purchase to that number. Under section 13 alone, it must be admitted that the petitioner could not have purchased the land in question from the state. It follows that the state could not have sold to him, and, consequently, could not have issued the patent to him. In any case, where the state can sell, it can issue a patent; and when it can not sell, it can issue no patent.

But the petitioner bases his claim upon section 15, which provides, as before stated, that "the title of the state * * * shall be conveyed to the purchaser, or to his or her heirs or assigns, by patents free of charge."

We see no conflict between that and section 13.

If the latter had an additional clause, providing that only citizens of the United States, or those who have declared their intention to become such, may purchase any lands, or receive patents therefor, from the state, it would not be claimed that an assignee, who is a Chinaman, could demand and receive a patent. If that was the law, it would be admitted that only such assignees as were citizens, etc., could claim a patent under section 15. In other words, although that section declares that the title of the state shall be conveyed to the assignee of the purchaser, it would not then follow that *every* assignee could have a patent, or that *any* would be entitled to receive it without showing himself to be one of the persons who may demand it.

So it is as the statute now reads. Construing section 15 with section 13, the meaning of the latter is, that the title of the state * * * shall be conveyed to the assignee of the purchaser, when he or she is a person who may become a purchaser, and only then. In this case, neither petitioner nor Crum could have purchased the land in question at

the time the patent was demanded, because each had previously bought the maximum amount, thereby deriving all the benefits intended by the statute to be conferred upon them.

The writ is denied.